**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| GOT I, LLC and KIDS II, INC., | |
|     Plaintiffs, | |
| v. | Civil Action No. 1:16-CV-00038-WSD |
| XRT, INC. and DAVID EUGENE SILVERGLATE, | |
|     Defendants. | |

## PLAINTIFFS' FACT DISCLOSURE

Plaintiffs GOT I, LLC and Kids II, Inc. (collectively "Kids II") hereby provide the Court with the following Fact Disclosure in accordance with the Court's order of December 21st, 2016.

## I.  Introduction

On December 30, 2010, Kids II entered into an Asset Purchase Agreement and Royalty Agreement with Defendants XRT, Inc. (formerly known as Rhino Toys Inc.) and David Silverglate. (Dkt. 01-2 and 01-3.) The Royalty Agreement assigned different royalty rates to three different product classifications: "Existing Products," "Newly Developed Products," and "Combined Products."

Kids II brought this Declaratory Judgment action in response to a demand letter from Defendants' counsel disputing how certain products should be

1

classified under the Royalty Agreement.  (*See* Dkt. 58 ¶¶ 1-5 and 25-31.)   At the time of filing, the alleged underpayment of royalties amounted to ▇▇▇▇ (*see* Dkt. 58 ¶ 2) out of a total of over ▇▇▇▇ paid under the Asset Purchase Agreement of which over ▇▇▇▇ was paid under the Royalty Agreement itself. (*See* KIDS0359765, KIDS0360448, KIDS0326577, KIDS0326567, KIDS0326842.)  In other words, at the time of the demand letter, the discrepancy was less than ▇▇ of what Defendants had received under the Asset Purchase Agreement.  Kids II brought the present litigation to bring certainty on the amounts owed, as this affects business planning and pricing decisions for its products.

Rather than exercise audit rights under the Royalty Agreement, or litigate the merits of the applicable royalty rates in the declaratory judgment claim, almost six months after the litigation was filed, Defendants alleged that the purported underpayment was a material breach and repudiation of the agreement.  On that basis, Defendants purported to terminate the agreement and alleged that over $100 Million in unspecified damages should be paid immediately.  (*See* Dkt. 19 at 2 and 19-20 and 23.)  XRT's 30(b)(6) witness was deposed on the factual basis for this $100 Million allegation, and could articulate none beyond identifying legal counsel as the source of that amount.  (Book Rough Tr. (Jan. 4, 2017) at 210:22-211:11.)

Defendants' claim of material breach and repudiation—and demand for "over $100 Million" in damages after its demand letter for about ███—has derailed what should have been a straight-forward dispute over applicable royalty rates.  It has caused demands for full payment of all monies Defendants could receive over the ██ year life of the Royalty Agreement (presumably $100 Million in Defendants' counterclaim), motions for judgment on the pleadings for a *Brulotte* defense that would be irrelevant but-for the attempt to recover accelerated damages, and discovery disputes over projected sales and other information about how to value a single accelerated payment as opposed to payment over time based on actual sales as the Royalty Agreement specifies.

Even after the litigation was filed, Kids II continued to wire hundreds of thousands of dollars to Defendants under the Royalty Agreement and Defendants continued to accept them.  (*See, e.g.*, KIDS0365360.)  After Defendants purported to terminate the Royalty Agreement and claim that it was "repudiated" (*see* Dkt. 57-4), Kids II nevertheless continued to wire the amount agreed to be owed as Kids II always had; Defendants received, but now have purported to return, that money by check, and so Kids II is setting up an escrow for it (which has been delayed by Defendants deferring the question of whether they would like to be a party to the escrow agreement).

Kids II believes that underpayment of royalties in this case cannot constitute a material breach or repudiation as a matter of law.  *See Perkinelmer Health Scis., Inc. v. Agilent Techs., Inc.*, No. 12-10562-NMG, 2014 U.S. Dist. LEXIS 134597, at *15-16 (D. Mass. Sep. 24, 2014) ("[P]artial underpayment of royalties does not constitute a material breach."); *Jobim v. Songs of Universal, Inc.*, 732 F. Supp. 2d 407, 421-22 (S.D.N.Y. 2010) ("Universal's breaches regarding royalty payments, however, is not material since it was only partial; Universal paid some royalties to VM."); *Nolan v. Sam Fox Publ. Co.*, 499 F.2d 1394, 1399 (2nd Cir. 1974) (holding that payment of 26% of royalties owed was only a partial, and not a material, breach).  Otherwise, anytime that a licensor felt there was an underpayment, rather than resolving the disputed underpayment, the licensor would instead purport to terminate the agreement and seek to receive all payments (agreed and otherwise) up-front.  Were that the law, the case law would be replete with awards of accelerated damages; it is not.

The parties have conducted extensive discovery in this case so far. As of this filing, the parties have exchanged a total of 38 subpoenas requesting documents and 19 subpoenas requesting depositions, taken or scheduled 24 depositions, and filed 4 joint discovery letters with the Court (dated 8/102016, 11/4/2016, 11/29/2016, and 12/18/2016). Now that fact discovery is coming to a close, Kids II

intends to file a Motion for Summary Judgment on Defendants' claim of material breach and repudiation which, if successful, could drastically narrow the scope of this dispute going forward, allow for meaningful settlement discussions, and potentially obviate the discovery disputes currently pending (which concern valuation of accelerated damages). Kids II respectfully requests that the Court enter a briefing schedule for Plaintiffs' Motion for Summary Judgment on Defendants' material breach and repudiation claims, and that expert discovery deadlines be stayed pending the resolution of the motion.

## II. Identification of each legal claim upon which Plaintiffs contend they are entitled to a remedy

Kids II identifies the following legal claims upon which Kids II claims entitlement to a remedy in accordance with the Court's December 21st order:

### a. Plaintiffs' Declaratory Judgment Claim

As explained above, Kids II brought this Declaratory Judgment action in order to settle a relatively narrow dispute concerning the classification of products. The Royalty Agreement assigns different royalty rates to different product classifications: "Existing Products," "Newly Developed Products," and "Combined Products." Mr. Silverglate was a Kids II employee from early 2011 through the end of 2012. During that time, and for a period of time thereafter, the majority of products were classified as "Existing Products" or "Newly Developed Products" as

Mr. Silverglate was actually involved in the development of those products. After Mr. Silverglate's employment with Kids II ended, Kids II continued to independently develop products without Mr. Silverglate's assistance (just as it had during Mr. Silverglate's affiliation with Kids II). On occasion, Kids II would develop a new product that incorporated "Existing Products" or "Newly Developed Products" that Mr. Silverglate developed. These are the products that Kids II contends are properly classified as "Combined Products" under the agreement, but that Defendants dispute.

Kids II's claim for a declaratory judgment action therefore seeks a declaration from the Court as to the proper classification of products under the agreement, as well as a declaration that Kids II has not underpaid royalties. (*See* Dkt. 58 at 21-23.)

### b. Plaintiffs' Counterclaim for Breach of Contract due to Defendants' improper attempt to terminate agreement

While Kids II did not originally allege a breach of contract claim, Defendants' allegations of material breach and improper attempt to terminate the Royalty Agreement on that basis have necessitated the claim which was included in subsequent amended pleadings. (*See* Dkt. 58 at 54-62.)

### c. Plaintiffs' Counterclaim for Breach of Implied Covenant of Good Faith and Fair Dealing

Kids II also did not originally allege a breach of the implied covenant of good faith and fair dealing, but Defendants' allegations of material breach and their improper attempt to terminate the Royalty Agreement demonstrate a lack of good faith and have necessitated the claim. (*See* Dkt. 58 at 63-73.)

## III. Identification of each item of alleged damage to which the party contends it is entitled to recover in this action

Kids II's original complaint for declaratory judgment did not seek damages. However, Defendants' breach of the Royalty Agreement and the implied covenant of good faith and fair dealing as described above have necessitated the claim.  Kids II identify each item of alleged damage as follows:

### a. Actual Damages

Kids II seeks actual damages in the form of accounting costs and escrow fees necessitated by Defendants' breach of the Royalty Agreement and the implied covenant of good faith and fair dealing.   Defendants' refusal to accept further royalty payments due to their improper attempt to terminate the Royalty Agreement has necessitated that an escrow account be created and has required associated accounting overhead.  Kids II is presently working with Defendants to establish an escrow account.  Since the escrow account has not yet been

established, the escrow fees and associated accounting fees are presently unknown. However, the documents that Kids II would rely on to support this claim for damages would be the agreements and fee schedules associated with the eventual escrow account, as well as any ancillary accounting materials.  Lorna Street, Kids II's Chief Financial Officer would be the person who has the most comprehensive knowledge about this claim for damages and the basis for the claim.

### b.  Nominal Damages

Defendants' allegations of material breach and repudiation, as well as Defendants' improper termination of the Royalty Agreement, have caused significant uncertainty with regard to product planning and marketing at Kids II, and have diverted resources and the attention of employees from other endeavors, causing actual damage to Kids II.  However, due to the difficulty in determining the amount of these damages with reasonable certainty, Kids II presently seeks only nominal damages based on Defendants' breach of the Royalty Agreement and the implied covenant of good faith and fair dealing.  Lorna Street, Kids II's Chief Financial Officer would be the person who has the most comprehensive knowledge about this claim for damages and the basis for the claim.

### c.  Attorneys' Fees & Costs

Defendants further seek to recover their attorneys' fees pursuant to Section 17 of the Royalty Agreement which provides that "[i]n the event of any dispute, action arbitration, claim or other proceeding brought by either party against the other in connection with this Agreement, the prevailing party shall be entitled to recover all costs and expenses incurred in connection with such dispute, arbitration, action, claim or other proceeding, including without limitation, the fees and costs of its attorneys . . . ."  Since Kids II has not yet prevailed and Defendants have not yet refused to pay fees, any dispute over fees owed is not ripe for adjudication.

## IV.  List of products subject to the Royalty Agreement or disputed

The Court's December 21st order requested that each party provide:

a.) A list of each product the party admits is subject to the Royalty Agreement.  For each product, state whether it was being sold on the date the Royalty Agreement was signed and, if not, the date on which sales commenced; and

b.) A list of each product the party contends is a "Newly Developed Product" not covered by the Royalty Agreement, and, if covered, state in detail the basis on which the party contends it is covered by the Royalty Agreement.

(Dkt.  93 at 2.)

9

In response, Kids II provides the chart attached as **<u>Exhibit A</u>**, which identifies Kids II's contention as to whether products should be classified as "Existing Products," "Newly Developed Products," or "Combined Products" under the Royalty Agreement.  Of the more than 90 products identified in Exhibit A, Kids II has paid royalties on 85 of them.  There are only ***nine*** disputed products for which Kids II contends no royalty is owed.

As demonstrated in Exhibit A, the vast majority of disputed royalties involve whether the products that Kids II classifies as "Combined Products" (because they were independently developed by Kids II and incorporate "Existing Products" or "Newly Developed Products") should be classified as "Newly Developed Products" (and therefore subject to a higher royalty) as Defendants contend.

Respectfully submitted,

Date: January 5, 2017                    */s/ Ruben J. Rodrigues*

Matthew B. Lowrie (*pro hac vice*)
Matthew A. Ambros (*pro hac vice*)
Ruben J. Rodrigues (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
Ellen T. Wong (*pro hac vice*)
Joel T. Diamond (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2600
Boston, MA 02199-7610
Telephone: (617) 342-4000
Facsimile: (617) 342-4001
mlowrie@foley.com
mambros@foley.com
rrodrigues@foley.com
ewong@foley.com
jdiamond@foley.com

Wesley A. Roberts
Dan R. Gresham
Scott P. Amy
THOMAS HORSTERMEYER, LLP
400 Interstate North Parkway SE
Suite 1500
Atlanta, GA 30339-5029
Telephone: (770) 933-9500
Facsimile: (770) 951-0933
wesley.roberts@thomashorstemeyer.com
dan.gresham@thomashorstemeyer.com
scott.amy@thomashorstemeyer.com

*Attorneys for Plaintiffs*
*GOT I, LLC and Kids II, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GOT I, LLC and KIDS II, INC., | |
|      Plaintiffs, | |
| v. | Civil Action No.: 1:16-CV-00038-WSD |
| XRT, INC. and DAVID EUGENE SILVERGLATE, | |
|      Defendants. | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this day, I filed the foregoing **PLAINTIFFS'**

**FACT DISCLOSURE** using the Court's CM/ECF system which will

automatically send notice of the filing to all counsel of record.

Dated: January 5, 2017

                        */s/ Ruben J. Rodrigues*