IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GOT I, LLC and KIDS II, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | FILE NO. 1:16-CV-00038-WSD |
| XRT, INC. and DAVID EUGENE ) | |
| SILVERGLATE, ) | |
| ) | |
| Defendants/Counterclaimants ) | |

**DEFENDANTS' SUMMARY OF OUTSTANDING DISCOVERY DISPUTES**

**I.   XRT's investment bankers should not be compelled to produce privileged documents that have no relevance to this litigation.**

The Court should deny Kids II's attempt to compel production of documents from XRT's investment bankers at PCG because, as the Court noted during the telephone conference with counsel on December 21, 2016, the requested documents are irrelevant to this case. Also, they are protected by the attorney-client privilege.

**A.   The documents Kids II seeks are irrelevant.**

Kids II's attempt to compel the production of valuation documents prepared by PCG should be denied because these documents are not relevant to this case. *See Mitchell v. Nix*, No. 1:05-CV-2349-JOF, 2007 WL 779067 (N.D. Gal. Mar. 8, 2007) ("A district court can deny a motion to compel further discovery if it concludes that the questions are irrelevant." (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

1

The only documents identified by Kids II as potentially relevant are valuations PCG may have prepared. Kids II stated that these documents could somehow be relevant to XRT's damages claims. They are not. XRT is seeking damages for unpaid past royalties and future royalties that would have been paid had Kids II performed its obligations under the Royalty Agreement. The only information that XRT and its experts rely on to calculate those damages are plaintiffs' financial statements, sales projections, board minutes, and Oball plans. (Dkt. 101.) This information is in Kids II's possession, not in any valuation documents prepared by PCG. ***XRT does not rely on any valuation of Kids II to support its damages, and such valuations are irrelevant and likely inadmissible.***

Kids II may argue that it should receive PCG's valuation documents because it produced similar documents. This is wrong. Kids II only produced its third-party valuation very recently in an effort to bolster its position on this motion. Moreover, any valuations or projections prepared by XRT were mere guesses by XRT and its agents as to Kids II's plans and forecasts. XRT's estimates of Kids II projected sales—prepared years ago, without access to Kids II's internal financials, plans, or sales projections—are not relevant to XRT's damages claim. Kids II's attempt to compel production of the PCG documents should be denied.

### B.     The attorney-client privilege has not been waived.

"The attorney-client privilege is 'the oldest of the privileges for confidential

communications known to the common law.'" *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 421 (2013) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "The purpose of the privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 422. In furtherance of this policy, the Georgia Supreme Court has repeatedly held that "*the attorney-client privilege includes by necessity, the* **network of agents** *and employees of* **both the attorney and client***, acting under the direction of their respective principals, to facilitate legal representation.*" *Neuman v. State*, 773 S.E.2d 716, 719 (Ga. 2015) (citations omitted, emphasis added). Applying this rule, Georgia courts have held that the presence of third party agents does not waive the privilege. *See Coca-Cola Co. v. Allianz Ins. Co.*, 2004 WL 7308665, at *5 (N.D. Ga. Mar. 4, 2004) (insurance broker did not waive privilege); *see also Home Depot U.S.A., Inc. v. G&S Investors / Willow Park L.P.*, No. 1:01-cv-1119-WBH, at 8 (N.D. Ga. Sept. 27, 2001) ("[T]hough Marsh is an independent contractor and not employed directly by Home Depot as counsel, communications between [Home Depot's] in-house team and Marsh employees for the purpose of forming legal strategies are protected by the attorney-client privilege.").[1]

---

[1] Other Courts have applied similar standards and held that financial advisors for corporate transactions do not waive privilege where they are agents of the corporation or its attorney. *See Stafford Trading, Inc. v. Lovely*, 2007 WL 611252,

XRT, with and on the advice of its transactional attorneys, retained investment banker PCG to act as its agent and negotiator for its sale of assets to Kids II. XRT, its transactional counsel and PCG, worked together on strategy and objectives, including understanding the potential structure and purchase amounts/valuation of this complicated buy-out deal. Years later, when the present dispute over royalties arose (and even after Kids II filed the lawsuit), PCG again served as XRT's agent to be the primary point of contact in settlement negotiations with Kids II's agent. Again, PCG, XRT, and XRT's counsel worked together on settlement strategies and objectives. In this capacity, PCG was XRT's primary—sometimes only—point of contact with Kids II's agent.

Kids II has not disputed (and cannot) that PCG acted as XRT's agent in XRT's sale of assets to Kids II or that PCG represented XRT in settlement negotiations between the parties. As XRT's representative, it was vital that PCG be included in privileged communications and privy to XRT's legal strategy in order to adequately represent XRT's interests. For instance, to negotiate the terms of the asset sale, PCG needed to understand the legal implications of the royalty agreement, and XRT's counsel needed to discuss value/modeling with PCG to assess the terms of the deal. (Ex. 3, Dep. Tr. 160:11-18.) Similarly, to negotiate with Kids II regarding a settlement, PCG needed to know XRT's

---

at *6 (N.D. Ill. Feb. 22, 2007)',.; *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 2006 WL 1004472, at *3-4 (S.D.N.Y. Apr. 17, 2006).

4

legal position. These communications are protected. *See Neuman v. State*, 773 S.E.2d at 719; *Coca-Cola*, 2004 WL 7308665, at *5.

Kids II has not explained how PCG's involvement in these privileged communications amounts to a waiver of the privilege under Georgia law; indeed, ***none of the cases Kids II has cited in support of its argument apply Georgia law—the law applicable here***. *See Dahl*, 714 F. Supp. 2d 225 (First Circuit); *Ackert*, 169 F.3d 136 (Second Circuit); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 689 (S.D. Fla. 2009) (Florida law). Privileged communications involving the agents of a client—like the communications here—are protected under Georgia law. Kids II's attempt to compel PCG to produce privileged documents should be rejected.

**II.   Kids II is not entitled to any additional discovery simply because XRT's corporate counsel served as one of XRT's 30(b)(6) witnesses.**

The true aim of Kids II's motion is to get another shot at deposing Mr. Silverglate. Mr. Silverglate was already deposed for 7-hours as an individual, plus an additional 3-hours on 9 topics as XRT's 30(b)(6) witness. XRT's long-time corporate counsel, Jason Book, then testified as XRT's Rule 30(b)(6) witness on ***39 separate topics, for a total of nearly 8 hours***. Kids II spent the majority of its deposition time with Mr. Book trying to set up this motion by attempting to make Mr. Book seem unprepared through marginally relevant, highly detailed and technical questions – the majority of which it already knew the answer to. (See, Ex. 3, Dep. Tr. 139:19-140-3.)

5

The 30(b)(6) deposition was created to prohibit a corporation from hiding its knowledge and position through employees disclaiming personal knowledge. Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed.). XRT is not some multinational corporation hiding its position. ***Kids II already deposed its President, Mr. Silverglate, for 10 hours over two days***, which is more than sufficient. Mr. Book's 30(b)(6) testimony was thorough and complete. Kids II cannot reasonably state that it is unaware of XRT's position on any relevant fact. It has already deposed virtually every XRT-affiliated witness associated with this case (including Ms. Silverglate, who last worked for XRT many years before the acquisition). Kids II's attempt to depose Mr. Silverglate further is harassment.

### A.     Mr. Book was thoroughly prepared for his 30(b)(6) deposition.

First, Rule 30 and relevant case law permits Mr. Book to testify as a 30(b)(6) witness on behalf of XRT. *See* Fed. R. Civ. P. 30(b)(6) ("The named organization must then designate one or more officers, directors, or managing agents, ***or designate other persons who consent to testify*** on its behalf . . . ."); *McPherson v. Wells Fargo Bank, N.A.*, 292 F.R.D. 695, 698 (S.D. Fla. 2013) ("[T]he designated witness ***could even be a corporate attorney*** who can testify on the corporation's behalf."). "It is settled law that a party need not produce the organizational representative with the greatest knowledge about a subject; instead, it need only produce a person with knowledge whose testimony will be binding on the party." *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 311 (S.D. NY 2003). The duty is for

6

the company to educate its witness so that he is fully prepared to testify on behalf of the company. *Sony Electronics, Inc. v. Soundview Technologies, Inc.* 217 F.R.D. 104, 112 (D. CT 2002). This is what occurred here.

Mr. Book spent a tremendous amount of time and effort educating himself about the *39* topics for which he was designated.  (**Ex. 1,** 30(b)(6) topics with Mr. Book's notes.)  Mr. Book prepared for many hours over a period of weeks by reviewing thousands of pages of documents, including the pleadings and interrogatory responses in this case, photos and actual copies of products and prototypes, non-privileged communications concerning the transaction and royalty dispute at issue.[2]  Mr. Book testified that he directed Markowitz Herbold to collect and provide him with the written materials he needed to prepare himself, such as e-mails between XRT's accountants and Kids II, communications between the parties and their transactional counsel regarding the transaction, motions, pleadings, etc. (e.g. Ex. 3, Dep. Tr. at 140:16-24.)  He also directed Ms. Penner, XRT's accountant, to prepare a summary of certain royalty and accounting information, in order that he be fully prepared to discuss certain royalty and accounting topics.  (e.g. Ex. 3, Dep. Tr. 137:18-22.) In addition, Mr. Book attended the depositions of Mr. Silverglate, reviewed the deposition transcripts of at least five Kids II witnesses, and has personal, non-privileged knowledge

---

[2] (A photograph of the binders of materials and toys he reviewed and brought with him for reference at the deposition is attached as **Ex. 2**.)

about many relevant topics (including email and telephonic negotiations with Kids II's counsel, and several in-person meetings with the executives of Kids II). Further, Mr. Book had non-privileged discussions with XRT's accountants, Sheila Kellerman and Sue Penner, as well as with David Silverglate. Kids II was permitted to fully explore all aspects of conversations concerning his preparation.

Second, Mr. Book was able to answer all questions posed, by either personal knowledge or memory, reference to his documents, or offering to contact the person with actual knowledge during breaks. *Risinger v. SOC, LLC*, 306 FRD 655, 663 (D NV 2015) ("Rule 30(b)(6) is not designed to be a memory contest"). Indeed, on the rare occasion that Mr. Book was uncertain about the answer to a question relevant to a topic, he volunteered to contact the XRT personnel or agent who might have that knowledge. Notably, in each instance, Kids II declined Mr. Book's offers to get more information. This is because Kids II is not interested in the actual subject matter, but only in trying to prove that Mr. Book has not memorized or does not know every single fact remotely pertaining to the case.

XRT was also judicious in determining on which of the 48 topics to designate Mr. Book. He was not designated for topics on which he could not be fully informed regardless of preparation time, such as: Mr. Silverglate's patents and patent applications (Categories 29 & 36), Mr. Silverglate's development of product concepts (Category 30), products designed by Mr. Silverglate at Kids II (Category 33), Mr. Silverglate's departure from Kids

II (Category 34), information retained by Mr. Silverglate from his employ, etc. (Category 39).)

### B. It is well established that Mr. Book can serve as XRT's 30(b)(6) witness without waiving privilege.

It is well settled that corporate counsel can serve as a party's 30(b)(6) witness, and can do so without waiving privilege. *See, e.g., L.S.S. Realty Corp. v. Vanchlor Catalysts, LLC*, 2005 WL 638056, at *2 (E.D. Penn. Mar. 16, 2005) ("[W]e decline to prohibit [the witness's] designation merely because she serves as corporate counsel and we decline to prohibit her invocation of the privileges if the questioning ventures into protected waters."). Kids II *has not provided a single case* supporting its claim that Mr. Book was required to waive privilege to testify as a 30(b)(6) witness. In fact, ample case law supports XRT's position that Mr. Book is able to testify on XRT's behalf without waiving privilege. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995) ("[T]he mere fact that it designated a lawyer, pursuant to Fed. R. Civ. P. 30(b)(6), as its corporate representative at one deposition, is a wholly insufficient ground to hold that Marathon waived its attorney-client privilege.").

Mr. Book's refusal to testify about the content of privileged communications between XRT and its attorneys in no way disqualifies him as a 30(b)(6) witness, because those communications are protected by the privilege regardless of who serves as a XRT's 30(b)(6) witness. *See L.S.S. Realty*, 2005 WL 638056, at *2 ("Although . . . corporate

9

counsel[] may assert the privilege, so too may any corporate designee regarding information exchanged from client to counsel or vice versa."). The fact that Mr. Book asserted the privilege (rather than, for instance, Mr. Silverglate) is irrelevant to his eligibility to serve as a 30(b)(6) witness.

Kids II's motion is not legally or factually supported and should be denied.

Respectfully submitted, this 6th day of January, 2017.

<div style="margin-left: 50%;">

s/ Henry D. Fellows, Jr.
Renee Rothauge
(Admitted *pro hac vice*)
Adam M. Starr
(Admitted *pro hac vice*)
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue
Portland, OR 97204
reneerothauge@markowitzherbold.com
adamstarr@markowitzherbold.com
(503) 295-3085

Henry D. Fellows, Jr.
Georgia Bar No. 257825
Amy M. Durrence
Georgia Bar No. 170398
FELLOWS LABRIOLA LLP
Suite 2300 South Tower
225 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200
hfellows@fellab.com
adurrence@fellab.com
*Attorneys for Defendants*

</div>

## CERTIFICATE OF SERVICE

This is to certify that on this day I filed the foregoing using the Court's CM/ECF system which will automatically send notice of the filing to the following counsel of record:

>Scott P. Amy, Esq.
>scott.amy@thomashorstemeyer.com
>Wesley Roberts, Esq.
>wesley.roberts@thomashorstemeyer.com
>Thomas Horstemeyer LLP
>400 Interstate North Parkway SE
>Suite 1500
>Atlanta, GA 30339

>Matthew B. Lowrie, Esq.
>mlowrie@foley.com
>Matthew A. Ambros, Esq.
>mambros@foley.com
>Ruben J. Rodrigues, Esq.
>rrodrigues@foley.com
>Ellen T. Wong, Esq.
>ewong@foley.com
>Joel T. Diamond, Esq.
>jdiamond@foley.com
>Foley & Lardner LLP
>111 Huntington Avenue, Suite 2600
>Boston, MA 02199

This 6th day of January, 2017.

>s/ Henry D. Fellows, Jr.
>Henry D. Fellows, Jr.