IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GOT I, LLC and KIDS II, INC.,

                **Plaintiffs,**

       **v.**                                       **1:16-cv-38-WSD**

XRT, INC. and DAVID EUGENE
SILVERGLATE,

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendants XRT, Inc. ("XRT") and David Eugene Silverglate's (together, "Defendants") Motion for Partial Summary Judgment [47] and Plaintiffs GOT I, LLC ("GOT I") and Kids II, Inc.'s ("Kids II") (together, "Plaintiffs") Cross-Motion for Partial Summary Judgment [60].

## I.    BACKGROUND

This is a contract dispute regarding the royalties due under a Royalty Agreement [1.3] entered into by Plaintiffs and Defendants. GOT I, XRT (formerly known as Rhino Toys), and David Silverglate entered into an Asset Purchase Agreement [1.2] ("APA") and the Royalty Agreement on December 30, 2010. By them, GOT I purchased from XRT all of the "Acquired Assets," as that term is defined in Section 1.1 of the APA.

The Royalty Agreement provides for royalties to be paid by GOT I to XRT on three separate categories of products sold by Kids II:  (i) "Existing Product Lines"; (ii) "Newly Developed Product Lines"; and (iii) "Combined Products." The Royalty Agreement defines Existing Product Line(s) as:  "(i) the current product lines of [Rhino Toys] which were actually sold in the marketplace as of the Closing Date; (ii) former product lines of [Rhino Toys] which were previously sold in the marketplace prior to the Closing Date; and (iii) product lines currently under development by [Rhino Toys] but not yet sold in the marketplace as of the Closing Date.  Products in these Existing Product Lines are referred to herein as 'Existing Products.'"  ([1.3] at 3).

Newly Developed Product Line(s) are defined, in part, as:  "[A]ny products developed by Kids II after the Closing Date, December 30, 2010, that do not fall within the Existing Product Lines, and which are (1) based on or derived from the Existing Products or any intellectual property or proprietary technology embodied therein . . . .  Products in the Newly Developed Product Lines are referred to herein as 'Newly Developed Products.'"  (Id.).  The Royalty Agreement states that certain royalties are due on Net Sales for all Newly Developed Products exceeding an agreed upon sales threshold.

The Royalty Agreement provides that Delaware law governs the interpretation and construction of the Royalty Agreement.

The parties disagree on the interpretation of the definition of "Newly Developed Product Lines."  Defendants contend that "intellectual property" embodied in the Existing Products Lines includes "trademarks."  They claim that a product that contains or attaches an embedded OBALL trademark, or other trademark used with an Existing Product, is a "Newly Developed Product Line." Plaintiffs' position is that a product cannot be classified as a "Newly Developed Product Line" just because it contains or has attached the OBALL trademark or other trademark.

## II.    DISCUSSION

### A.    Legal Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the nonmoving party must demonstrate that

summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  A party is entitled

to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

B.    Analysis

The parties agreed that the Royalty Agreement is governed by Delaware law. See Koch Bus. Holdings, LLC v. Amoco Pipeline Holding Co., 554 F.3d 1334, 1338 (11th Cir. 2009) (applying Delaware law where the parties' contract provided Delaware law governed). Under Delaware law, the construction of a contract is a question of law. Rhone-Poulenc Basic Chem. Co. v. Am. Mot. ins. Co., 616 A.2d 1192, 1195 (Del. 1992). "[W]hen interpreting a contract, the role of a court is to effectuate the parties' intent." AT&T Corp. v. Lillis, 953 A.2d 241, 252 (Del. 2008) (quotation omitted). Under Delaware's objective theory of contract interpretation, a "court looks to the . . . words found in the written instrument" to determine the intent of the parties in entering into the agreement. Sassano v. CIBC World Mkts. Corp., 948 A.2d 453, 462 (Del. Ch. 2008). The court interprets these words according to their "common or ordinary meaning" from the point of view of an "objectively reasonable third-party observer." Id. Even the literal meaning of a contract must be rejected if it "would be clearly

5

unreasonable and yield an arbitrary result." Citadel Holding Corp. v. Roven, 603

A.2d 818, 822 (Del. 1992); see also Beanstalk Grp., Inc. v. AM Gen. Corp., 283

F.3d 856, 860 (7th Cir. 2002) ("[A] contract will not be interpreted literally if

doing so would produce absurd results, in the sense of results that the parties,

presumed to be rational persons pursuing rational ends, are very unlikely to have

agreed to seek.").

     Extrinsic evidence may only be introduced if an ambiguity exists in the

language of the contract.  A contract provision is not ambiguous simply because

the parties disagree on its meaning. E.I. du Pont de Nemours & Co. v. Allstate Ins.

Co., 693 A.2d 1059, 1060 (Del. 1997).  Contract language is ambiguous only if it

is reasonably or fairly susceptible of two or more different interpretations.

Lamberton v. Traveler's Indem. Co., 325 A.2d 104, 106 (Del. Super. 1974).

     The dispute here is whether a product that uses a trademark from an Existing

Product is a "Newly Developed Product Line" under the Royalty Agreement.

Newly Developed Product Line(s) are defined, in part, as:  "[A]ny products

developed by Kids II after the Closing Date, December 30, 2010, that do not fall

within the Existing Product Lines, and which are (1) based on or derived from the

Existing Products or any intellectual property or proprietary technology embodied

therein."  Defendants contend that the plain meaning of "intellectual property"

includes trademarks, and thus a Newly Developed Product necessarily includes

trademarks embodied in or associated with an Existing Product.  Plaintiffs argue

that the plain language precludes classifying a product as a Newly Developed

Product based solely on the use of a trademark because (i) a Newly Developed

Product cannot be "based on or derived from" a trademark; (ii) a trademark is not

intellectual property or proprietary technology "embodied" in an Existing Product;

and (iii) Defendants' interpretation is not commercially reasonable and renders

other language in the Royalty Agreement superfluous and meaningless.

The Court begins its analysis with the plain and ordinary meaning of the

contract language.  "Intellectual property" is defined as:

- "property that results from original creative thought, as patents, copyright material, and trademarks."  Webster's Encyclopedic Unabridged Dictionary of the English Language 990 (2001); and

- "chiefly Law property (such as patents, trademarks, and copyright material) which is the product of invention or creativity, and does not exist in a tangible, physical form."  Oxford English Dictionary, available at http://www.oed.com.

The plain and ordinary meaning of "intellectual property" inarguably encompasses

trademarks, which Plaintiffs concede.  Plaintiffs argue, however, that, when read in

the context of the Royalty Agreement, the term intellectual property does not

include trademarks.  Plaintiffs first note that Black's Law Dictionary defines

"embodiment" as "the tangible manifestation of an invention," and they argue that,

because a trademark is merely a mark used in association with goods or services—
and not a tangible manifestation of an invention—"intellectual property" must not
include trademarks.  Plaintiffs' argument is misleading, because Plaintiffs rely on
the legal definition of the term "embodiment," which applies only to patents, rather
than the plain and ordinary meaning of "embodied."  To "embody" means:

- "to give concrete form to; express, personify, or exemplify in concrete
  form"; "to . . . organize; incorporate"; and "to embrace or comprise."
  Webster's Encyclopedic Unabridged Dictionary of the English Language
  635 (2001); and

- "[t]o give concrete form to (what is abstract or ideal); to express (principles,
  thoughts, intentions) *in* an institution, work of art, action, definite form or
  words, etc;" and "To include, comprise."  Oxford English Dictionary,
  available at http://www.oed.com.

Thus, contrary to Plaintiffs' restrictive, patent-specific definition, to "embody"
means merely to "incorporate" or "include."  Based on this definition, a product
that is based on or derived from trademarks incorporated or included in an Existing
Product theoretically is a "Newly Developed Product."

    The question remains whether based on other Royalty Agreement terms this
theoretical definition is reasonable.  The Royalty Agreement requires that the
product be "based on or derived from" the intellectual property.  Plaintiffs argue
that a product cannot be "based on or derived from" a trademark.  They argue that,
because a trademark is a word, phrase, or graphic design used to indicate the origin

or ownership of a good, a "product" cannot be "based on or derived from" a trademark.   The Court agrees.   A "product" is "[a]n article or substance that is manufactured or refined for sale[.]"   Oxford English Dictionary, available at http://www.oed.com.   In the context of the APA and the Royalty Agreement, the "products" at issue here are physical toys.   To "derive" means "[t]o arise, spring, come *from* something as its source; to take its origin *from*" or "[t]o be drawn or descended; to take its origin or source; to spring, come *from*."   Oxford English Dictionary, available at http://www.oed.com.   A trademark is a word, phrase, symbol, or design that identifies and distinguishes the source of the goods of one party from those of others.   See 15 U.S.C. § 1127.

Based on these definitions, the Court finds that it would stretch the imagination and the plain and ordinary meaning of the Royalty Agreement language to find that a *product* could arise or originate from a *mark* denoting another product.   Under such an interpretation, a Newly Developed Product could encompass *any* product merely by the act of placing on it the "OBALL" trademark or another mark denoting the Existing Products.   Plumbing equipment, under Defendants' interpretation, would be "derived from" a trademark of an Existing Product merely by virtue of the trademark being affixed to the equipment. Defendants fail to offer any persuasive explanation how a product could derive

9

from a trademark.[1]  The Court finds that adopting Defendants' interpretation would lead to absurd results, and the Court rejects the interpretation.  See Roven, 603 A.2d at 822; Beanstalk Grp., 283 F.3d at 860.

The more reasonable, and natural, interpretation, is that a Newly Developed Product is a product that is based on or originates from the Existing Products or a patent or other proprietary technology embodied by the Existing Products.  The Court's conclusion is supported by the observation that, in the context of the APA and the Royalty Agreement, the products at issue are physical toys.  It is difficult to see how a toy could be "based on or derived from" the trademark "OBALL," or any other mark.  Further, had the parties intended Defendants' interpretation, they would have used trademark-specific language to define Newly Developed Product Line(s).  For instance, the parties could have defined Newly Developed Product Line(s) to include any product "marketed and sold under a trademark used in connection with any Existing Product."  Indeed, in Section 1(n) of the Royalty

---

[1]      Defendants argue (1) that to "derive" is to trace from "a source of origin," (2) that a trademark indicates the source or origin of goods, and that (3) the phrase "derived from" thus reflects the parties' intent to cover trademarks. Notwithstanding the tenuous logic of Defendants' argument, Defendants would have the Newly Developed Product Line definition read:  Any products which trace their source of origin to trademarks incorporated in an Existing Product. Defendants' argument does not solve their primary problem:  their interpretation requires that a *product* be derived from a *mark* denoting another product.

Agreement—one page after the definition of Newly Developed Product Line(s)—the parties defined "Bendy Ball Product" to mean "the product marketed and sold . . . under the product name BABY EINSTEIN$^{TM}$  BENDY BALL . . . ."

The Court finds that a product cannot be classified as a Newly Developed Product under the Royalty Agreement based solely on the use of a trademark. Accordingly, Defendants' Motion for Partial Summary Judgment is denied, and Plaintiffs' Cross-Motion for Partial Summary Judgment is granted.[2]

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants XRT, Inc. and David Eugene Silverglate's Motion for Partial Summary Judgment [47] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs GOT I, LLC and Kids II, Inc.'s Cross-Motion for Partial Summary Judgment [60] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties' motions to file matters under seal [63], [77], [80], [88], [99], [102], [106], [110], [117] are **GRANTED**.

---

[2]     Because several of the documents the parties submitted in support of their briefs on the parties' cross-motions and other filings contain confidential and sensitive information, the parties filed their motions for leave to file matters under seal [63], [77], [80], [88], [99], [102], [106], [110], [117].  Having reviewed the contents of the documents the parties seek to seal, the Court finds they contain confidential and sensitive information, and the Court grants the parties' motions.

**SO ORDERED** this 16th day of March, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE